UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| CLARINDA COLOR LLC,<br><br>Plaintiff,<br>v.<br><br>BW ACQUISITION CORPORATION, BEOWULF LTD. and BRIAN NELSON,<br><br>Defendants.<br>v.<br><br>WULF MANAGEMENT CORPORATION, MARK NELSON and GREAT GRAPHX.COM, INC.,<br><br>Third-Party Respondents. | Civil No. 00-722 JMR/FLN<br><br>Honorable James Rosenbaum<br>Chief U.S. District Court Judge<br><br>Honorable Franklin Noel<br>Magistrate Judge |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OFFER OF PROOF IN RELATION TO THE RULE TO SHOW CAUSE ISSUED BY THE COURT ON JUNE 14, 2004**

NOW COMES Plaintiff Clarinda Color, LLC ("Clarinda"), by and through its attorneys, Freeborn & Peters LLP, admitted *pro hac vice*, and in support of its Response to Defendants' Offer of Proof in Relation to the Rule to Show Cause Issued by the Court on June 14, 2004, states as follows:

## INTRODUCTION

Clarinda pleads the Court to once and for all put an end to the wanton tomfoolery repeatedly exhibited by the defendants and third-party respondents throughout this case. With Brian and Mark Nelson at their helm, these parties have used every trick and tactic in their arsenal to delay their day of reckoning. It is due time for an end to their scheming.

SCANNED
JUN 25 2004
U.S. DISTRICT COURT MPLS

## BACKGROUND

On June 14, 2004, the Court issued its order (the "Order") on the Report and Recommendation (the "Report and Recommendation") of the Honorable Franklin L. Noel, United States Magistrate Judge, as to Clarinda's Amended Petition to Avoid Fraudulent Transfers and Enforce Constructive Trust. A true and correct copy of the Order is attached hereto as *Exhibit A*.

As part of the Order, the Court required third-party respondents Wulf Management Corporation ("Wulf") and Great Graphx.com ("Great Graphx") to show cause by June 21, 2004 why they should not be divested of legal title to certain pre-press equipment originally transferred from defendant BW Acquisition Corporation ("BWAC"). *Ex. A* at 13, ¶10.

On June 21, 2004, Michael B. Chase transmitted a letter (the "Offer of Proof") to the Court and to counsel for Clarinda on behalf of unspecified "Defendants." A true and correct copy of the Chase Letter is attached hereto as *Exhibit B*. Presumably, Mr. Chase sent the Offer of Proof on behalf of Wulf and Great Graphx, which were the parties subject to the Court's rule to show cause.[1]

## ARGUMENT

The arguments presented in the Offer of Proof are woefully inadequate to carry the Defendants' burden of proof as to why they should not be divested of legal title to the fraudulently transferred property.

It is worth noting that the Defendants' arguments are not new, and have already been thoroughly briefed and argued by the parties and reviewed by the Court. As Mr. Chase points

[1] In these proceedings, and despite the obvious conflicts of interests among them—especially in light of this Court's Order—Mr. Chase has represented BW Acquisition, Wulf Management, Great Graphx, Brian Nelson *and* Mark Nelson.

out, the Affidavit of Brian Nelson, which is attached to the Offer of Proof and comprises the Defendants' entire argument in response to the rule to show cause, was already a part of the record that the Court considered in issuing the Order (docket no. 98). *Ex. B.* Further, it fails to address Great Graphx's position at all.

Second, the alleged existence of a lien by Highland Bank on certain of BWAC's assets in no way counteracts the Court's finding of an enormous fraudulent transfer from BWAC to Wulf. *Ex. A* at 10, 11. On the date of the $1.645 million asset transfer from BWAC to Wulf in August 2000, Highland Bank's alleged secured claim had a value of *at most* $73,269.34 in principal and interest. *See* Clarinda's Statement of Material Facts as to Which There is No Genuine Issue ("Facts") (docket no. 93), ¶¶ 34, 35; Affidavit of Kelly O'Connor Goldberg in Support of Clarinda's Motion for Summary Judgment ("Goldberg Affidavit") (docket no. 94), Ex. 20. Consequently, the transfer from BWAC to Wulf involved at least $1.572 million in assets that were not subject to the alleged Highland Bank lien. Additionally, the alleged Highland Bank lien was effectively terminated on or about August 18, 2000. *See* Facts, ¶ 35; Goldberg Affidavit, Ex. 20. Even if Highland Bank's lien was effective at any time during or after the fraudulent transfer, the collateral to which the lien could attach may not exceed the balance of the loan, which in this case was less than $75,000.

Moreover, at the time of the asset transfer from BWAC to Wulf in August 2000, no other security interests were attached to or perfected in the assets. Even if valid, the alleged security interest of ACRO Business Finance Corp. ("ACRO") could not have attached until November 17, 2000, which was the date of the Revolving Loan and Security Agreement between Wulf and ACRO. *Minn. Stat.* §336.9-203(b)(1); *see* Facts, ¶¶ 37, 38; Goldberg Affidavit, Ex. 22. No other agreements prior to that date between BWAC and ACRO or Wulf and ACRO even

purported to grant ACRO a security agreement in BWAC's or Wulf's assets. *See, also, fn.3, infra.*

Accordingly, at least $1.572 million in unsecured assets were transferred from BWAC to Wulf in August 2000. The Court has already held that no jury could reasonably find other than that this transfer was actually and constructively fraudulent. *Ex. A* at 10, 11. On the basis of that finding, the Court avoided the transfer of assets from BWAC to Wulf and held that all successive transfers (*i.e.*, the transfer of a security interest from Wulf to ACRO and the asset transfer from Wulf to Great Graphx) are void. *Ex. A* at 11, 12. Clearly, the grant of a security interest, whether in August or November, is itself a transfer avoiding attachment by other creditors and falls squarely in the realm of a successive transfer and is therefore also void.

Although Clarinda has been unable to locate any Minnesota decision construing the issue, courts have held that under other fraudulent conveyance statutes, legal title of fraudulently transferred assets reverts to the debtor upon avoidance of the transfer. *See, e.g.,* ***Ray E. Friedman & Company v. Jenkins***, 824 F.2d 657 (8th Cir. 1987) (under N.D. Cent. Code § 13-02-07 (1981), *repealed by* 1985 N.D. Laws Ch. 186, § 12, grain storage bins fraudulently transferred from son to father remained with the son when the court avoided the transfer); ***Jahner v. Jacob***, 515 N.W.2d 183, 185 (N.D. 1994) ("The effect of setting aside a fraudulent transfer of property is to revest title in the debtor."); ***Emarine v. Haley***, 892 P.2d 343, 346 (Colo. App. 1994) ("The primary remedy in an action for fraudulent conveyance is to return the property fraudulently conveyed to its prior status of ownership, thereby bringing it within reach of the judgment creditor of the fraudulent transferor."). Therefore, and because the Court properly avoided the transfer from BWAC to Wulf and from Wulf to Great Graphx, the grant of a security interest by Wulf to ACRO, and subsequently by Great Graphx to ACRO when Great

Graphx allegedly assumed the obligation to ACRO, is void. Accordingly, Wulf, Great Graphx and ACRO are divested of legal title, and legal title in the property reverts to BWAC.[2]

On a related note, counsel for ACRO, Richard Thomson, transmitted a letter on behalf of ACRO to counsel for Clarinda on June 21, 2004 (the "ACRO Letter"), apparently copying the letter to the Court. A true and correct copy of the ACRO Letter is attached hereto as *Exhibit C*. The ACRO Letter was sent to counsel for Clarinda to "warn you and [Clarinda] not to interfere with ACRO's rights in the assets that are the subject of much of the Order." *Ex. C*. The letter also threatens Clarinda with the pursuit of damages that ACRO may suffer should Clarinda attach or levy upon the Defendants' assets, this despite the Court's express language allowing Clarinda to do so, presumably upon assets other than the pre-press equipment. The Court should not permit this misleading correspondence to distract it from the true issues at bar.

First, ACRO does not, as it claims, hold a valid perfected security interest in the fraudulently transferred assets. As discussed *supra*, Wulf could not have transferred a valid security interest in fraudulently transferred property to ACRO because such an interest was not Wulf's to transfer. Moreover, even if Wulf did effectively transfer a security interest to ACRO, that transfer was properly avoided by the Court in the Order. *Ex. A* at 11,12.

Second, ACRO has essentially taken the position that it should be rewarded for its lack of due diligence. A simple investigation into the BWAC-Wulf transaction (which was the impetus behind the substantial loan from ACRO to Wulf in the first place) would have revealed the ongoing law suit filed by Clarinda against BWAC and its principal, Brian Nelson. That same

[2] The Court may recall that the obligations to Highland Bank and to ACRO were personally guaranteed by Brian Nelson, the mastermind of the fraudulent scheme of activity evidenced in these proceedings. Quite obviously, Brian Nelson now desperately seeks to ensure that ACRO's loan is fully collateralized so as to avoid what would amount to a breach of the loan documents and the immediate right of ACRO to recover from Brian Nelson personally for the outstanding ACRO debt.

investigation would have also raised some poignant questions about the purpose for the asset transfer from BWAC to Wulf, and revealed that the value of the assets that Wulf received from BWAC far exceeded the amount that it paid for them. Further, a letter directing the proceeds of the initial ACRO advance was prepared by Brian Nelson and tendered to ACRO, therein outlining the scattered use of said proceeds, some to pay the Highland Bank obligation in the amount of $73,269 and some to pay other of Brian Nelson's personal obligations. This alone should have given rise to an inquiry about the use of the proceeds and the right of Wulf to pledge the collateral that was formerly BWAC's and pledged to Highland Bank. Finally, there is simply no evidence in either Mr. Chase's tender or the letter from ACRO's counsel suggesting that the initial advance was to be secured by a pledge of the subject assets, whether then owned by BWAC or Wulf. The only collateral security pledge granted to ACRO occurred in November of that same year, not in August when the initial advance was made.[3] This further evidences the fact that the collateral was not the subject of any collateral pledge when BWAC fraudulently transferred its assets to Wulf, despite the rather suspect recording of a UCC-1 statement 16 days thereafter.

All of this means that not only does ACRO lack any interest in the fraudulently transferred assets, but the thinly-veiled threats in the ACRO Letter are clearly a desperate attempt to compensate for ACRO's ill-advised and poorly-investigated decision to lend money to Wulf and the Nelsons in exchange for a pledge of fraudulently transferred assets.

[3] ACRO was served with a Subpoena during these supplemental, post-judgment proceedings and it in fact tendered documents in response thereto. The tender was said to be all of ACRO's documents and records in relation to any of the Defendant entities and individuals. Void from the tender was any collateral pledge, or reference thereto in any promissory note, dated on or about August of 2000. The only collateral pledge was by Wulf in November of 2000, three months after the fraudulent transfer of the assets.

Based upon the foregoing, and because the ACRO Letter was tendered to the court without leave to do so by a non-party and by an attorney who has not appeared of record, the Court should disregard the assertions made in the ACRO Letter in determining whether to grant or deny the Offer of Proof.

Finally, although neither Mr. Chase nor ACRO have argued that ACRO was a "good faith transferee or obligee entitled to a lien or a right to retain any interest in the asset transferred," *Minn. Stat.* §513.48(d)(1), for the reasons stated above, even if they had, the argument could not be sustained in this instance. A lender must take a grant of a security pledge without notice, either actual or constructive, of any fraud or outstanding adverse interest. *Hall v. World Savings and Loan,* 189 Ariz. 495, 943 P.2d 855, at 860. *See also Chrysler Credit v. Burton,* 599 F.Supp 1313 (M.D.N.C. 1984). Constructive notice includes both information available through recorded documents and knowledge of facts that impose a duty to inquire. *See High v. Davis,* 283 Or. 315, 584 P.2d 735 (1978). Actual or constructive notice of a grantor's fraud will deny a grantee any protected status. *Chrylser Credit* at 1317. Notice of facts and circumstances which would put a man of ordinary prudence and intelligence on inquiry is equivalent to knowledge of all of the facts a reasonably diligent inquiry would disclose. *See Maricopa Utils. Co. v. Cline*, 60 Ariz. 209, 134 P.2d 156 (1943). ACRO had constructive notice of the fact that the only valid titleholder to the assets which would become the subject of ACRO's blanket lien was BWAC. There is simply no evidence anywhere that supports a contention that Wulf acquired the assets that were formerly owned by BWAC and pledged to Highland Bank other than the self-serving bill of sale. There never was a payment pursuant to that Bill. In fact, with their allegation that the money being loaned to Brian Nelson's enterprises was to be used to purchase said assets, suspect is the fact that the initial proceeds letter tendered

by Brian Nelson mentioned nothing of a payment to Wulf for any assets whatsoever. Further, on record at the time of the initial advance from ACRO to Wulf was a) the Highland Bank UCC-1, against which ACRO did not seek a payoff or release; and b) this pending litigation, which was filed in March of 2000 and directly brought into question BWAC's cash assets and Brian Nelson's fraudulent scheme of withholding said assets.

**WHEREFORE**, Plaintiff Clarinda Color, LLC prays that this Court deny Defendants' Offer of Proof, and provide any additional relief that the Court deems just and equitable.

Respectfully submitted,
**CLARINDA COLOR LLC**
By: ______________________
One of its Attorneys

Admitted *pro hac vice:*
Neal H. Levin, Esq. (#6203156)
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
(312) 360-6530

Local counsel:
Todd L. Gurstel, Esq. (#185619)
The Gurstel Law Firm, P.A.
401 N. Third Street, Suite 590
Minneapolis, Minnesota 55401
(612) 664-8200

#618127

**THE GURSTEL LAW FIRM, P.A.**
*A PROFESSIONAL CORPORATION*
*Suite 590*
*401 North Third Street*
*Minneapolis, Minnesota 55401*
*Attorneys at Law*

*Todd L. Gurstel*
*Heidi L. Staloch*
*Jennifer Berquist*
*Svetlana Denekamp*
*Simone Suri*
*Keith Sjostrom*

*e-mail: gurstel@gurstel.com*
*www.gurstel.com*

*Telephone:(612) 664-8200*
*Facsimile: (612) 664-8222*

June 24, 2004

UNITED STATES FEDERAL DISTRICT COURT
CLERK OF THE COURT
U.S. COURTHOUSE ROOM 202
300 SOUTH FOURTH STREET
MINNEAPOLIS, MN 55415

RECEIVED JUN 24 U.S. DISTRICT COURT MINNEAPOLIS, MINNESOTA

RE: Clarinda Color LLC v. BW Acquisition Corporation, et al vs.
Court File: Civil No. 00-722 JMR/FLN

Dear Sir/Madam:

Enclosed for filing please find Plaintiff's Response to Defendants' Offer of Proof in Relation to the Rule to Show Cause Issued by the Court on June 14, 2004, Exhibit A to said Response, Exhibit B to said Response, Exhibit C of said Response, and Affidavit of Service of the same.

**Please feel free to contact Svetlana at 612-843-1089 with any questions or comments that you may have.**

Thank you for your time and attention in this matter.

Very truly yours,

THE GURSTEL LAW FIRM, P.A.

Todd Gurstel

TLG:snd

Enclosures

orig. to JMR/jmf