**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

| | | |
|---|---|---|
| **CLARINDA COLOR LLC,**<br><br>**Plaintiff,**<br>**v.**<br><br>**BW ACQUISITION CORPORATION, BEOWULF LTD. and BRIAN NELSON,**<br><br>**Defendants.**<br>**v.**<br><br>**WULF MANAGEMENT CORPORATION, MARK NELSON and GREAT GRAPHX.COM, INC.,**<br><br>**Third-Party Respondents.** | ) | **Civil No. 00-722 JMR/FLN**<br><br>**Honorable James Rosenbaum**<br>**Chief U.S. District Court Judge**<br><br>**Honorable Franklin Noel**<br>**Magistrate Judge** |

**<u>EXHIBIT A TO PLAINTIFF'S RESPONSE TO DEFENDANTS' OFFER OF PROOF IN RELATION TO THE RULE TO SHOW CAUSE ISSUED BY THE COURT ON JUNE 14, 2004</u>**

SCANNED
JUN 2 5 2004
U.S. DISTRICT COURT MPLS

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
00-CV-722(JMR/FLN)

| | | |
|---|---|---|
| Clarinda Color LLC | ) | |
| v. | ) | |
| BW Acquisition Corp., Beowulf Ltd., and Brian Nelson | ) | ORDER |
| v. | ) | |
| Wulf Management Corp., Mark Nelson, and Great Graphx.com | ) | |

Plaintiff seeks summary judgment on its Amended Petition to Avoid Fraudulent Transfers and Enforce Constructive Trust. The Court, sua sponte, considered its own continuing subject matter jurisdiction in light of Peacock v. Thomas, 516 U.S. 349 (1996), and referred the matter to the Honorable Franklin L. Noel, United States Magistrate Judge, for Report and Recommendation. The Magistrate Judge recommended that certain counts of the Amended Petition be dismissed without prejudice due to lack of subject matter jurisdiction. Plaintiff filed timely objections to the Report and Recommendation pursuant to Local Rule 72.1.

Based upon a de novo review of the record herein, the Court adopts the Magistrate's Report and Recommendation, and dismisses certain claims without prejudice.

The Court further considers plaintiff's motion for summary judgment, and having done so, concludes plaintiff is entitled to

summary judgment on its remaining claims.

I. Background

The facts set forth herein are either undisputed or considered in the light most favorable to defendants.

This contract matter was initially brought by plaintiff, Clarinda Color LLC ("Clarinda"), in March, 2000. Clarinda sued defendants BW Acquisition Corporation ("BWAC"), Beowulf Ltd., and Brian Nelson, seeking damages of $500,000. Plaintiff and defendants compete in the pre-press printing business. The underlying dispute arose when Clarinda sold its business to BWAC. At all times relevant herein, Brian Nelson was the president, director, and sole shareholder of BWAC.

On August 1, 2000, five months after the complaint was filed, BWAC sold $1,645,000 worth of equipment, inventory, and accounts receivable to Wulf Management Company ("Wulf"), a new company formed by Mr. Nelson who was the company's president, director, and sole shareholder. (Brian Nelson Deps. 8/28/01 at 34, and 12/30/02 at 30-31, 69.) Mr. Nelson acknowledges that "substantially all" of BWAC's assets were transferred to Wulf. (Brian Nelson Deps. 8/28/01 at 23, and 12/30/02 at 50-52; Pl. Ex. 14 at 1.) Wulf contractually agreed to pay the full amount, but actually paid BWAC no more than $750,000. (Compare Pl. Ex. 14 with Brian Nelson Dep., 8/28/01 at 9-10, 34-35).

The purchase agreement did not disclose the fact that Highland

Bank held a security interest in BWAC's assets, based on the Bank having provided BWAC $750,000 to buy plaintiff's business. The value of Highland Bank's interest in August 2000 is disputed; defendants claim the full $750,000 was owed, while plaintiff has provided evidence showing that the remaining balance -- reflecting the only consideration BWAC received from Wulf -- was $73,268.34. (Compare Nelson Affidavit 2/27/03 at ¶ 3 with Hofland Dep. at 13-15, and Plaintiff's Ex. 21, referenced below.) The record does not disclose whether Highland Bank filed any UCC financing statement to perfect its security interest in BWAC's assets.

After the transfer, BWAC had at most $20,000 in assets, and ceased all business operations. Everything else had been transferred to Wulf, which took over BWAC's business at the same location, using the same equipment, employing the same staff, and servicing the same customers. No notice of the transaction was given to BWAC customers, employees, creditors, or to the Court. (Brian Nelson Deps. 8/28/01 at 23-24, and 12/30/02 at 50-51, 88; Donald Kellett Dep. 3/10/03 at 17-22, 30-31.)

On August 15, 2000, Wulf borrowed funds from ACRO Corporation to finance its purchase of BWAC, pledging BWAC's assets as collateral. On August 18, 2000, Mr. Nelson, acting as Wulf's president, directed ACRO to pay $275,000 to Highland Bank. (Pl. Ex. 20.) Highland Bank used the funds to pay off the $73,268.34 balance on BWAC's loan, and released its lien on the assets of

BWAC. (Pl. Ex. 21.)

Some months later, the parties' contract dispute was tried to a jury in this Court. The jury rendered judgment in favor of Clarinda in the amount of $401,872.82. On May 2, 2001, the Court entered judgment for that amount in favor of plaintiff and against defendant BWAC, in the absence of any indication of the transfer to Wulf. The jury declined to find Brian Nelson individually liable. In the course of trying to collect its judgment, plaintiff discovered the August, 2000, transfers recounted above.

In January, 2002, Wulf ceased doing business, and allowed yet another company -- Great Graphx.com ("Great Graphx"), owned and run by Brian Nelson's brother Mark -- to use the pre-press equipment in return for making payments on the ACRO loan. In November, 2002, plaintiff sought and received permission from this Court to bring a Petition to Avoid Fraudulent Transfers against Wulf, Mark Nelson, and Great Graphx as it attempted to collect its judgment against BWAC.

Plaintiff now seeks to recover its damages from the transferred assets.

II. Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 246 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its pleadings, but must produce significant probative evidence demonstrating a genuine issue for trial. See Anderson, 477 U.S. at 248-49; see also Hartnagel v. Norman, 953 F.2d 394, 395-96 (8th Cir. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis omitted). If the opposing party fails to carry that burden, or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See Celotex, 477 U.S. at 322.

The counts of the Amended Petition over which this Court has jurisdiction claim BWAC fraudulently transferred its assets to Wulf (Counts I and II), which in turn transferred its assets to Great Graphx (Counts V and VI). Plaintiff claims both transactions constituted actual and constructive fraud under the Minnesota Uniform Fraudulent Transfer Act ("UFTA"), Minn. Stat. §§ 513.44 and 513.45 (2004), and urges the Court to impose a constructive trust upon the assets, whether held by Wulf (Count III) or Great Graphx (Count VII).

"There can be little question that federal courts generally

possess the power to protect their judgments by setting aside fraudulent conveyances of the judgment debtor." Thomas, Head & Griesen Employees Trust v. Buster, 95 F.3d 1449, 1453 (9th Cir. 1996), cert. denied, 520 U.S. 1116 (1997), citing Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 694-95 (1950). To protect its judgment against BWAC, the Court retains jurisdiction to avoid any fraudulent transfer from BWAC to Wulf and any subsequent transfers, to attach the transferred assets, to enjoin further transfers, and to allow execution against the assets or their proceeds. Minn. Stat. § 513.47; see also Peacock v. Thomas, 516 U.S. at 356. Prior to taking such steps, however, the Court must first determine whether the initial transfer from BWAC was fraudulent.

1. Was BWAC's Transfer to Wulf Fraudulent?

a. Is there an "asset"?

A debtor may not transfer assets intending to hinder, delay, or defraud creditors. See Minn. Stat. §§ 513.41-513.51 (2004); New Horizon Enterprises, Inc. v. Contemporary Closet Design, Inc., 570 N.W.2d 12, 14 (Minn. Ct. App. 1997). However, property is not an "asset" under the statute to the extent it is encumbered by a valid lien. Minn. Stat. § 513.41(2)(i); In re Wintz Cos., 230 B.R. 848, 860 (B.A.P. 8th Cir. 1999); Lorenz Bus Serv., Inc. v. Richfield Bus Co., 2002 WL 2005468, *3 (Minn. Ct. App. Sept. 3, 2002) (unpublished). A valid lien is one effective against the holder of

a judicial lien subsequently obtained by legal or equitable process or proceedings. Minn. Stat. § 513.41(13).

Under the Uniform Commercial Code, a security interest in collateral is only enforceable against the debtor and third parties if value has been given. Minn. Stat. § 336.9-203(b)(1) (2004). To the extent the value of the property exceeds the value of the security interest, the excess is an "asset" subject to the UFTA. See Preferred Funding, Inc. v. Jackson, 61 P.3d 939, 942 (Or. App. 2003) (construing identically-worded Oregon statute).

Here, BWAC transferred property valued at $1,645,000 to Wulf through the asset purchase agreement dated August 1, 2000. As of August 18, 2000, Highland Bank represented to Brian Nelson that it had a $73,268.34 security interest in the transferred property based on the BWAC loan. The Court has not been given evidence establishing the precise loan balance as of August 1, the date of the transfer, nor is there evidence that any payments were made on the loan between August 1 and August 18.

Assuming without deciding that Highland Bank's lien is valid up to the value of its security interest, a jury could reasonably infer from uncontradicted evidence that BWAC transferred over $1.5 million in unencumbered assets to Wulf. (Indeed, even accepting defendants' assertion that Highland Bank's interest was $750,000, there would still be $895,000 in assets remaining.)

Accordingly, the Court finds defendants have failed to raise

a genuine issue of material fact as to whether BWAC transferred assets to Wulf. Clearly, it has done so. Although the precise amount might be in dispute, there were clearly assets sufficient to satisfy all or part of plaintiff's judgment against BWAC.

b. Did BWAC Defraud Plaintiff?

The Court finds there is no genuine issue of material fact on the question of whether BWAC intended to, or actually did, defraud plaintiff by transferring its assets to Wulf. To prevail on its claim, plaintiff need not prove that BWAC transferred the precise assets that gave rise to the jury's verdict. Rather, plaintiff need only prove that BWAC transferred some assets from which the judgment might have been satisfied, leaving BWAC insolvent and putting the assets beyond the reach of creditors.

1. Actual Fraud

Under Minnesota law,

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor.

Minn. Stat. § 513.44(a)(1) (2004).

When assessing a debtor's intent under UFTA, "[t]ransactions involving corporations and their executives or corporations under the common control of the same officers and directors are to be regarded with skepticism by the courts and closely scrutinized." Snyder Elec. Co. v. Fleming, 305 N.W.2d 863, 867 (Minn. 1981),

citing Swanson v. Tomlinson Lumber Mills, Inc., 239 N.W.2d 216, 221, n.3 (Minn. 1976).

The Court can consider the presence of "badges of fraud" as it seeks to determine the existence of fraudulent intent. See Brown v. Third Nat'l Bank (In re Sherman), 67 F.3d 1348, 1353 (8th Cir. 1995). The Court may refer to the Minnesota UFTA's codification of a number of these "badges of fraud." In re Curry, 160 B.R. 813, 818 (Bankr. D. Minn. 1993), citing Minn. Stat. § 513.44(b). While one badge of fraud does not establish fraudulent intent, the presence of several "can constitute conclusive evidence of an actual intent to defraud, absent significantly clear evidence of a legitimate supervening purpose." Brown, 67 F.3d at 1354 (internal quotation omitted).

Here, the Court finds the transfer from BWAC to Wulf bears unmistakable badges of fraud. As defendants admit, BWAC transferred its assets to another company owned by BWAC's president, Brian Nelson. Mr. Nelson established Wulf only shortly before the transfer. See Snyder, 305 N.W.2d at 867; Minn. Stat. § 513.44(b)(1). Brian Nelson was president, director and sole or controlling shareholder of both BWAC and Wulf, so BWAC retained control of the property it transferred to Wulf. §§ 513.44(b)(1), (2).

BWAC never disclosed the transfer to its customers, employees, or creditors. § 513.44(b)(3). The transfer, which occurred a mere

five months after plaintiff's complaint was filed, was neither disclosed to plaintiff nor to the Court. §§ 513.44(b)(4), (10). The transfer involved "substantially all" of BWAC's assets, leaving BWAC insolvent. §§ 513.44(b)(5), (9); Swanson, 239 N.W.2d at 221. Finally, although the stated value of the property exceeded $1.6 million, Brian Nelson testified that Wulf paid BWAC no more than $750,000 for it. § 513.44(b)(8).

Based on this evidence, no jury could reasonably find other than that the transfer was designed only to fraudulently place assets beyond the reach of the Court and of BWAC's potential judgment creditor.

2. Constructive Fraud

A plaintiff may also prove a transfer was constructively fraudulent. Plaintiff has done so concerning the transfer from BWAC to Wulf. Minnesota law provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Minn. Stat. § 513.45(a) (2004). Therefore, constructive fraud requires proof of (1) a transfer; (2) a prior claim; (3) no "reasonably equivalent value"; and (4) debtor insolvency. As noted above, the undisputed evidence would oblige a jury to find that plaintiff had established each of these elements.

Defendants have been wholly unable to demonstrate that Wulf took in good faith for value, see Minn. Stat. § 513.48. They have offered no evidence of a legitimate supervening purpose for the BWAC transfer. Defendants merely urge the Court to ignore plaintiffs' evidence while offering nothing to contradict it or challenge its accuracy. This hardly constitutes the establishment of an issue of material fact for trial by defendants. Accordingly, summary judgment is proper on these claims as well.

The UFTA is designed to prevent debtors from putting their property which would be otherwise available for payment of debts beyond the reach of their creditors. In re Wintz Cos., 230 B.R. at 859; Shields v. Goldetsky (In re Butler), 552 N.W.2d 226, 232 (Minn. 1996). As seen above, there are sufficient badges of fraud to conclude as a matter of law that BWAC fraudulently transferred property to Wulf in an attempt to prevent plaintiff from collecting its judgment. The transfer is thus avoidable, and must be recovered on behalf of plaintiff from Wulf and all subsequent transferees.

Since we have found the transfer fraudulent, the assets are -- and were from the time of the fraud -- in a constructive trust for the benefit of plaintiff. Successive transfers are therefore void.

III. Conclusion

Accordingly, IT IS ORDERED that:

1. The Magistrate's Report and Recommendation is adopted.

[Docket No. 106]

2. Counts IV and VIII of the Amended Petition are dismissed without prejudice. [Docket No. 83]

3. Counts I, II, V and VI are dismissed to the extent plaintiff seeks to make Wulf and Great Graphx directly liable for the judgment against BWAC in excess of, or in addition to, their liability as fraudulent transferees. [Docket No. 83]

4. Plaintiff's Motion to Amend the Prayer for Relief in its Summary Judgment Motion is granted. [Docket No. 109] This amendment is deemed an amendment to the prayer for relief in the Amended Petition as well.

5. Plaintiff's Motion for Summary Judgment is granted. [Docket No. 91]

6. The Court finds that the transfer of assets from BWAC to Wulf was fraudulent as to plaintiff, and hereby avoids the transfer. The transferred assets listed on Exhibit A to the Sale of Assets Agreement (Pl. Ex. 14), or their equivalent value in cash, are attached, and further transfer or use is hereby enjoined. Minn. Stat. § 513.47(a)(1),(2)(3). Plaintiff may levy execution on the assets transferred or their proceeds, whether in the hands of Wulf or Great Graphx, without further order of this Court. Minn. Stat. § 513.47(b).

7. Judgment is entered against Wulf in the amount of $401,872.82 as the first transferee of BWAC. Minn. Stat. § 513.48(b)(1). Wulf is ordered to immediately disgorge the assets it received from BWAC, or their equivalent value in cash, to the extent needed to satisfy plaintiff's judgment against BWAC.

8. A constructive trust is imposed upon the assets of Wulf, wherever located, up to the value of the judgment, for the benefit of plaintiff, until the plaintiff's judgment against BWAC is satisfied.

9. Great Graphx and any subsequent transferees are ordered immediately to cease using the assets and to disgorge the assets received from Wulf, or their equivalent value in cash, to the extent needed to satisfy plaintiff's judgment against BWAC.

10. Wulf and Great Graphx are hereby ordered to show cause on or before June 21, 2004, why they should not be divested of legal title to the pre-press equipment originally transferred from BWAC.

11. BWAC, Wulf, and Great Graphx shall file their corporate books and records with the Clerk of the Court forthwith.

12. Defendants shall make themselves available to the Court for subsequent proceedings forthwith.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 14, 2004

s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States District Judge