UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

Clarinda Color, LLC,

Plaintiff,

Civil Action No. 00-CV-722 JMR/FLN

v.

BW Acquisition Corporation
Beowulf LTD., and Brian Nelson,

Defendants.

v.

Wulf Management Corporation
Mark Nelson and Great
Graphx.com, Inc.

Third-Party Respondents.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELIEF FROM JUDGMENT AND FOR STAY**

Third Party Respondents, Great Graphx.com, Inc. ("GGX") and Mark Nelson (collectively the "Respondents") hereby submit their Memorandum of Law in Support of their Motions for Relief from Judgment and For Stay

## I. INTRODUCTION

In the Summary Judgment Order in this matter, the Court specifically determined that Respondents were transferees of what it ruled to be fraudulent conveyances of certain business assets, that Respondents should return all such transferred assets and that Respondents were not liable for the monetary judgment obtained by the Plaintiff against Defendants BW Acquisition

Corporation, Beowulf LTD., and Brian Nelson. Respondents believe that they have complied with the Court's summary Judgment Order dated June 14, 2004 and the Show Cause Order dated July 9, 2004, and that the Plaintiff is presently actively and aggressively engaging in collection remedies that are not authorized by the Court's Judgments and are beyond the scope of such Judgments. Despite the Respondents' compliance with the directive that they surrender and turn over all of the assets listed on the Appraisal, Plaintiff has issued garnishments against GGX's bank accounts on the basis of a Writ of Execution which provides that Respondents are liable for entire amount of the Judgment.

Respondents request a clarification of this Court's rulings and a determination of the scope of any additional post-judgment actions that Plaintiff can exercise against the Respondents. Since the resolution of these issues may require further evidentiary hearings to determine the extent of Respondents' further liability, if any, Respondents also request that the Court stay all further execution against Respondents until the Court rules on Respondent's motion herein.

## II.
## A CONDENSED PROCEDURAL HISTORY

1. Plaintiffs obtained Judgment against the Defendants BW Acquisition Corporation "BWAC") and Beowulf, Ltd. on May 2, 2001 in the amount of $401,872.82.

2. In November of 2002 Plaintiff obtained permission from this Court to bring a Petition to Avoid Fraudulent Transfer against the Respondents and Wulf Management Corp.

3. On June 14, 2004 this Court issued an Order granting the Plaintiff Summary Judgment ("Summary Judgment Order") and ruling, in part (relevant to GGX's motion herein):

a. that the transfer of assets from BWAC to Wulf had been fraudulent and ordered that "GreatGraphx and any subsequent transferee are immediately ordered to cease using the assets and to disgorge the assets received from Wulf, or their equivalent value in cash, to the extent needed to satisfy Plaintiff's judgment against BWAC." (III, Conclusion, paragraph 9);

b. that "Plaintiff may levy execution on the assets transferred or their proceeds, whether in the hands of Wulf or GreatGraphx…" (III, Conclusion, paragraph 6); and

c. that "Counts I, II, V, and VI are dismissed to the extent plaintiff seeks to make Wulf and GreatGraphx directly liable for the judgment against BWAC in excess of, or in addition to, their liability as fraudulent transferees." (III, Conclusion, paragraph 3);

4. On July 9, 2004 this Court issued an Order ("Show Cause Order:) which ruled in paragraph 2 that:

> Having received assets of BW acquisition as a result of fraud, Wulf and Great Graphx are divested of all right title and interest in and to the pre-press equipment transferred by BW Acquisition on August 1, 2000 up to the value of Plaintiff's judgment against BW Acquisition.

5. Plaintiff procured a Writ of Execution on June 29, 2004 from this Court (a copy of which is attached to the Affidavit of Mark Nelson [hereinafter the "*Nelson Affidavit*"] as Exhibit B).

6. On or July 15, 2004, Plaintiff served the Writ on GGX and Mark Nelson, and the U.S. Marshall, Plaintiff's counsel and a number of Plaintiff's agents entered GGX's business premises at 9555 James Avenue South, Suite 218, Bloomington, Minnesota and inventoried and removed all of the items on the Appraisal that either Affiant or GGX had in their possession. Thirteen (13) of the items from the Appraisal were never received by the Respondents (*Nelson Affidavit,* Exhibit D-1 ), and eleven (11) items from the Appraisal broke during the last two years and were discarded. (*Nelson Affidavit,* Exhibit D-2).

7. Plaintiff was advised that many of the items on the Appraisal were located at a

warehouse facility used by GGX and Affiant and GGX provided the U.S. Marshal, Plaintiff's counsel and Plaintiff's agents access to a warehouse facility at 321 West 83rd Street, Bloomington, Minnesota used by GGX on July 19, 2004. Plaintiff's counsel and Plaintiff's agents spent three days inventorying all of the various assets located therein. A list of such assets was prepared by Plaintiff's agents and is attached to the *Nelson Affidavit* as Exhibit B. Also attached to the *Nelson Affidavit* is Exhibit D-3 which details the items from the Appraisal which are located in the warehouse.

8. On or about July 19, 2004 Plaintiff caused a garnishment summons to be served upon the Stearns Bank, seeking to garnish GGX's bank accounts. (a copy of the Garnishment Summons is attached to the *Nelson Affidavit* as Exhibit E.)

## III.
## ARGUMENT

### A. Relief Under Rule 60.

Respondents' motion for relief from judgment by way of a clarification of the judgment or a determination of compliance with the judgment is based on Rule 60 (6) of the Federal Rules of Civil Procedure, which states in part:

> Rule 60. Relief from Judgment or Order
>
> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.
>
> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have

> prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

The purpose of a Rule 60(b)(6) motion, when made within a "reasonable time," is to provide relief from a judgment, including a default judgment, or for "any other reason justifying relief from the operation of the judgment," thus allowing a district court to inject equity and revive an otherwise lifeless claim. *Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S.Ct. 384, 93 L.Ed. 1099 (1949) (finding that Rule 60(b) (60 enables a court to "accomplish justice"); *Hoover v. Valley West DM*, 823 F.2d 227, 230 (8th Cir.1987) (weighing the "equities involved" on a Rule (60(b) motion). The principal procedural requirement is that the motion be made within a reasonable amount of time, and what constitutes a reasonable time is dependent on the particular facts of the case in question and is reviewed for abuse of discretion. See *Federal Land Bank v. Cupples Bros.,* 889 F.2d 764, 767 (8th Cir.1989).

Generally, Rule 60(b) provides for extraordinary relief, which may be granted only upon a showing of exceptional circumstances. *Atkinson v. Prudential Ins. Co.*, 43 F.3d 367, 371 (8th Cir.1994), and relief under Rule 60(b) is within the sound discretion of the district court. Id. at 371. Generally, such relief is granted only when new and unforeseen conditions cause extreme and unexpected hardship so that the decree is oppressive." *ARC v. Sinner*, 942 F.2d 1235, 1239 (8th Cir.1991) (quotations and citations omitted); and see also, *Stokors S.A. v. Morrison,* 147 F.3d 759 ( 8th Cir. 1998).

In this matter, the Respondents timely request for relief is necessitated by the unforeseen and excessive actions of the Plaintiff in its enforcement of the Judgment against the Respondents. Respondents are seeking relief within 60 days of the Summary Judgment filed by

the Court on June 14, 2004, which is by no means an unreasonable amount of time to have elapsed. The Judgment in and of itself is not the determinate and proximate criteria for Respondents' motion but it is the actions of the Plaintiff in the enforcement of the Judgment within the past few weeks which have necessitated this request for relief. Nonetheless, Respondents have proceeded with all due haste in that the actions of the Plaintiff threaten its ability to conduct business and thus its very existence. The Plaintiff has not limited its actions to obtaining possession of the assets listed on the Appraisal, but it is also seeking to garnish bank accounts which do not contain any funds which are proceeds of the items on the Appraisal (*Nelson Affidavit* paragraphs 13 and 14).

B. Clarification of the Court's Orders is Needed.

Respondents are requesting that the Court review and clarify certain provisions of its Summary Judgment Order which either appear to be contradictory, or are, in essence, being interpreted and enforced by the Plaintiff in an antithetical manner. Are Paragraphs 6 and 9 of the Summary Judgment Order compatible with Paragraph 3 of that Order? If Respondents are not liable for the Judgment obtained by Plaintiff against BWAC (Paragraph 3), to what extent is the Plaintiff authorized to garnish and execute upon GGX's assets which are not the fraudulently transferred assets or the proceeds thereof? The Plaintiff is presently seeking to garnish GGX's checking account without any showing the funds therein are the proceeds of the fraudulently transferred assets. Respondents submit that if the Plaintiff has in fact been awarded such a broad grant of authority under paragraphs 6 and 9 of the Summary Judgment Order (and apparently Plaintiff believes that is the case and is acting accordingly), then GGX is nothing more than a judgment debtor, and GGX and all of its assets are, for all practical purposes, being held

accountable for the full amount of the Judgment regardless of the source of GGX's assets. Based on the Court's ruling in Paragraph 3 of the Summary Judgment Order, Respondents do not believe that it was the Court's intention to grant the Plaintiff the unfettered right to seek to recover its judgment wherever it could.

Both the Writ and the Garnishment reveal that Plaintiff is seeking to recover the full amount of its judgment from the Respondents and that it is therefore treating the Respondents as judgment debtors, directly contrary to the explicit ruling in the Court's Summary Judgment Order. The funds in GGX's accounts should not be subject to Plaintiff's collection activities under the existing Court Orders. Respondents have never sold or transferred any of the business assets listed on the Appraisal, and they therefore have no funds which could be deemed the proceeds of such assets (*Nelson Affidavit* paragraph 12). GGX has other equipment and assets with which it can and is continuing to conduct business and the proceeds of the GGX's existing business operations which have been deposited in its checking account are not proceeds of the assets listed on the Appraisal (*Nelson Affidavit* paragraph 13), and therefore should not be garnished.

Respondents have fully complied with the Summary Judgment Order and the Show Cause Order to the best of their respective abilities. Attached to the *Nelson Affidavit* submitted herewith are spread sheets (Exhibits D-1, D-2, and D-3), detailing the status of all of the assets on the Appraisal that were not located at GGX's business premises, including those assets which GGX or Mark Nelson never received and over which they did not exert any control (*Nelson Affidavit,* Exhibit D-1 ), those assets which broke during use and were discarded (*Nelson Affidavit,* Exhibit D-2) and those assets which are located at the Warehouse, have never been used by Respondents and have been surrendered to Plaintiff (*Nelson Affidavit,* Exhibit D-3).

Despite the surrender of items at the warehouse which are on the Appraisal and Plaintiff has yet to take possession of such items. The remaining assets on the Appraisal have been repossessed by Plaintiff from GGX's business premises.

C. An Accounting of Plaintiff's Collection Efforts is Required.

Respondents are also requesting the Court to review the collection actions taken by the Plaintiff as of the date hereof to determine whether Plaintiff should be allowed to proceed without an accounting as to what results its actions have produced to date. The Plaintiff has simultaneously engaged in three separate actions collections against GGX, including the removal of all assets listed on the Appraisal that could be found at GGX's business premises, the inventory of all of the business assets located at a warehouse to which GGX has access (where a significant amount of the items on the Appraisal were located), and the garnishment of GGX's checking account. Attached to *Nelsons Affidavit* as Exhibit C is also a complete listing of all of the other business assets located at the warehouse (which are not on the Appraisal and not subject to the Court's Order) that was prepared by Plaintiff's agents. Defendants and Respondents have tendered to Plaintiff all of the balance of the business assets located in the warehouse in the place and stead of any items on the Appraisal which GGX never received or that may no longer exist due to breakage. Respondents submit that by reason of the Plaintiff's completed collection activities and Respondents' offer to surrender the assets in the warehouse, Plaintiff may already be whole and its judgment satisfied and that further collection activities are not justified. The venerable *Uniform Commercial Code* standard of "commercial reasonableness" (see Minn. Stat. §§ 336.9-607, 608, 610 and 615) requires that Plaintiff at some point be forced to sell and account for what it has seized before it can proceed with further

collection for any alleged deficiency. Plaintiff's garnishment of GGX's accounts in essence constitutes an effort to collect a deficiency before Plaintiff has accounted for what it has already seized. GGX could be exposed to undue hardship and unnecessary damages if the Plaintiff is permitted to continue to engage in an all out "burnt earth" collection effort, without a periodic stay of such procedures to render an accounting to the Respondents and the Court of what it has seized and the commercial reasonableness of its disposition of such assets.

D. The Plaintiff's Collection Activities Should Be Stayed.

Rule 62(b) provides for a stay during the pendency of a motion for relief from judgment as follows:

> (b) Stay on Motion for New Trial or for Judgment.
>
> In its discretion and on such conditions for the security of the adverse party as are proper, the court may stay the execution of or any proceedings to enforce a judgment pending the disposition of a motion for a new trial or to alter or amend a judgment made pursuant to Rule 59, or of a motion for relief from a judgment or order made pursuant to Rule 60.....

The reasons that Respondents are entitled to a stay under Rule 62(b) until the Court's determination of the issues raised by the Respondents have been argued hereinabove include the following:

1. The Respondents have requested relief from judgment under Rule 60(b) for clarification of the rights granted the plaintiff under the Court's Orders in this matter;

2. Respondents have fully complied with the Court's Order regarding the surrender of the assets deemed to have been fraudulently transferred and they have no other assets subject to the Court's Order in their possession; and

3. Respondents have tendered a large quantity of additional business assets to offset any damages that Plaintiff might suffer by reason of any assets that it never had in its possession or were discarded because of breakage.

Absent a stay of Plaintiff's collection activities during the adjudication of the scope of Plaintiff's collection rights under the Court's Orders, the matter may become moot in that GGX's very existence outside of a potential bankruptcy is endangered. Should the Court determine that Plaintiff has overstepped the bounds of its collection rights and in the meantime GGX has been forced to abandon its business, the victory may be quite hollow in the absence of an immediate stay.

## IV.
## CONCLUSION

For all of the reasons set forth above, Respondents request that the Court provided relief from judgment under Rule 60(b) by resolving any discrepancies in its Orders in favor of Respondents by limiting Plaintiff's collection remedies to those in directly pursuit of the fraudulently transferred assets or the proceeds there from and that the Court find that Respondents have fully complied with the Court Orders.

Dated: August 12, 2004

s/ Valdis A. Silins
Valdis A. Silins (Atty. Reg. No. 12221X)
Paige Fitzgerald Atty. Reg. No. 0303082)
Stephenson & Sanford P.L.C.
1905 E. Wayzata Blvd. Suite 220
Wayzata, MN 55391
952-404-2100

ATTORNEYS FOR RESPONDENTS