UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

Clarinda Color, LLC,

Plaintiff,

Civil Action No. 00-CV-722 JMR/FLN

v.

BW Acquisition Corporation
Beowulf LTD., and Brian Nelson,

Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO RE-EXAMINE RESPONDENTS**

v.

Wulf Management Corporation
Mark Nelson and Great
Graphx.com, Inc.

Third-Party Respondents.

Third Party Respondents, Great Graphx.com, Inc. ("GGX") and Mark Nelson (collectively the "Respondents") hereby submit their Memorandum of Law in Opposition to the Motion of Plaintiff to Re-Examine Mark Nelson in Aid of Enforcement of its Judgments. Specifically, Respondents objects to the over-reaching inquiry into Mr. Nelson's personal assets. Plaintiff is not entitle to execute against the assets of Mark Nelson given the lack any finding by this Court that he personally received any of the assets, or proceeds thereof, subject to Plaintiff's judgment and it has no judgment against him.

# I. INTRODUCTION

In the Summary Judgment Order in this matter, the Court specifically determined that GGX was a transferee of what it ruled to be fraudulent conveyances of certain business assets, that Respondents should return all such transferred assets and that Respondents were not liable for the monetary judgment obtained by the Plaintiff against Defendants BW Acquisition Corporation, Beowulf LTD. Respondents believe that they have complied with the Court's summary Judgment Order dated June 14, 2004 and the Show Cause Order dated July 9, 2004, and that the Plaintiff is presently actively and aggressively engaging in collection remedies that are not authorized by the Court's Judgments and are beyond the scope of such Judgments and the reasonable interpretation of the post-judgment discovery rules. Despite the Respondents' compliance with the directive that they surrender and turn over all of the assets listed on the Appraisal, Plaintiff now requests that this Court allow the Plaintiff to inquire as to Mark Nelson's personal assets. Plaintiff has attached a list of requested personal financial information of Mark Nelson's to its Notice of Deposition. This list is far over-reaching, unreasonable, unduly burdensome and is not even in line with ***Credit Lyonnais v. SGC International, Inc.*** 160 F.3d 428 (8th Cir. 1998), the case which Plaintiff assets provides authority for this unprecedented inquiry.

Respondents agree to a deposition of Mark Nelson in his official capacity as the President and Shareholder of Great Graphix.com, although some of the documents requested in Plaintiff's Notice of Deposition have already been provided. However, Mark Nelson in his individual capacity should not be subjected to an inquiry into his personal assets when the Court found no reason to impose liability upon him, did not find that any transfers were made to him and the

Plaintiff provided no information showing that there is a "close relationship" between Mark Nelson and the entities against which Plaintiff does have a judgment.

## II.
## A CONDENSED PROCEDURAL HISTORY

1. Plaintiffs obtained Judgment against the Defendants BW Acquisition Corporation "BWAC") and Beowulf, Ltd. on May 2, 2001 in the amount of $401,872.82.

2. In November of 2002 Plaintiff obtained permission from this Court to bring a Petition to Avoid Fraudulent Transfer against the Respondents and Wulf Management Corp.

3. On June 14, 2004 this Court issued an Order granting the Plaintiff Summary Judgment ("Summary Judgment Order") and ruling, in part (relevant to Respondents objections herein):

a. that the transfer of assets from BWAC to Wulf had been fraudulent and ordered that "GreatGraphx and any subsequent transferee are immediately ordered to cease using the assets and to disgorge the assets received from Wulf, or their equivalent value in cash, to the extent needed to satisfy Plaintiff's judgment against BWAC." (III, Conclusion, paragraph 9);

b. that "Plaintiff may levy execution on the assets transferred or their proceeds, whether in the hands of Wulf or GreatGraphx..." (III, Conclusion, paragraph 6); and

c. that "Counts I, II, V, and VI are dismissed to the extent plaintiff seeks to make Wulf and GreatGraphx directly liable for the judgment against BWAC in excess of, or in addition to, their liability as fraudulent transferees." (III, Conclusion, paragraph 3);

4. On July 9, 2004 this Court issued an Order ("Show Cause Order:) which ruled in paragraph 2 that:

Having received assets of BW acquisition as a result of fraud, Wulf and Great Graphx are divested of all right title and interest in and to the pre-press equipment transferred by BW Acquisition on August 1, 2000 up to the value of

Plaintiff's judgment against BW Acquisition.

5. Plaintiff procured a Writ of Execution on June 29, 2004 from this Court (a copy of which is attached to the Affidavit of Mark Nelson dated August 10, 2004 and filed with the Court on August 13, 2004 as document number 125 [hereinafter the "*First Nelson Affidavit"*] as Exhibit B).

6. On or July 15, 2004, Plaintiff served the Writ on GGX and Mark Nelson, and the U.S. Marshall, Plaintiff's counsel and a number of Plaintiff's agents entered GGX's business premises at 9555 James Avenue South, Suite 218, Bloomington, Minnesota and inventoried and removed all of the items on the Appraisal that either Affiant or GGX had in their possession. Thirteen (13) of the items from the Appraisal were never received by the Respondents (*First Nelson Affidavit,* Exhibit D-1 ), and eleven (11) items from the Appraisal broke during the last two years and were discarded. (*First Nelson Affidavit,* Exhibit D-2).

7. Plaintiff was advised that many of the items on the Appraisal were located at a warehouse facility used by GGX and Affiant and GGX provided the U.S. Marshal, Plaintiff's counsel and Plaintiff's agents access to a warehouse facility at 321 West 83rd Street, Bloomington, Minnesota used by GGX on July 19, 2004. Plaintiff's counsel and Plaintiff's agents spent three days inventorying all of the various assets located therein. A list of such assets was prepared by Plaintiff's agents and is attached to the *First Nelson Affidavit* as Exhibit B. Also attached to the *First Nelson Affidavit* is Exhibit D-3 which details the items from the Appraisal which are located in the warehouse.

8. On or about July 19, 2004 Plaintiff caused a garnishment summons to be served upon the Stearns Bank, seeking to garnish GGX's bank accounts. (a copy of the Garnishment Summons is attached to the *First Nelson Affidavit* as Exhibit E.)

9. On or about November 5, 2004, Plaintiff caused a garnishment summons to be served upon the Stearns Bank, seeking to garnish GGX's bank accounts.

10. On or about November 10, 2004, Plaintiff served and filed the current motion to re-examine Mark Nelson in his official capacity but also seeks to examine all personal assets of Mark Nelson since 2000.

## III.
## ARGUMENT

A. Discovery Rules as they apply to Mark Nelson in his individual capacity.

Plaintiff requests that Mark Nelson produce a plethora of personal financial information based upon Rules 30(a)(2) and 69(a) of the Federal Rules of Civil Procedure and Rule 69 of the Minnesota Rules of Civil Procedure. Rule 30(a)(2) of the Federal Rules of Civil Procedure provides that Plaintiff in this matter must obtain leave of the Court to conduct the requested deposition and obtain the documents. Rule 69(a) of the Federal Rules of Civil Procedure provides that a judgment creditor may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held. Fed. R. Civ. Pro. Rule 69. The rules and applicable case law provide the standard for discoverability is widely recognized as one that is necessarily broad in its scope, in order to allow the parties essentially equal access to the operative facts. *Archer Daniels Midland Company v. Aon Risk Services, Inc. of Minnesota*, 187 F.R.D. 578, 589 (D.Minn. 1999). Notwithstanding the liberality of discovery, however, it is not without bounds. As our Court of Appeals has observed:

> [T]his often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

> *Archer Daniels Midland Company,* 187 F.R.D. 578, 589 (Citing *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 382 (8th Cir.1992).
>
> Therefore, despite the liberality of discovery, "we will remain reluctant to allow any party to 'roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so.' " *Archer Daniels Midland Company,* 187 F.R.D. 578, 589 (Citing *Onwuka v. Federal Express Corp.,* 178 F.R.D. 508, 516 (D.Minn.1997); *Carlson Cos., Inc. v. Sperry & Hutchinson Co.,* 374 F.Supp. 1080, 1089 (D.Minn.1974); see also, *Blum v. Schlegel,* 150 F.R.D. 38, 39 (W.D.N.Y.1993)).

In this matter, Plaintiff seeks to discover personal assets of Mark Nelson when there has *not been a finding that any assets subject to the judgment have been transferred to Mark Nelson and Mark Nelson is not personally liable on any judgment nor was he found to have committed any fraudulent transfers*. Plaintiff seeks to obtain from Mark Nelson *all* of the following information from January 1, 2000 to the present: 1) documents showing transfer of assets or payments to Mark Nelson from BW Acquisition Corporation, Beowulf Ltd. Wulf Management Corporation and/or Great Graphx.com; 2) Copies of his 200-2004 federal and state tax returns; 3) Bank savings and loan and credit union account books and statements of account; 4) checking account statements; 5) employer withholding tax and pay check stubs for the past 12 months; 6) all form W-2s or Form 1099s issued, all expense reports and evidence of agreements or other evidence of salary earned and paid, employee handbooks, guidelines, or other published rules and regulations concerning expenses and re-payment associated therewith, stock option, profit sharing or other pension or retirement plans, and any or all additional information concerning compensation or payment of expense; 7) personal financial statements; 8) automobile or other vehicle titles; 9) stocks, bonds, notes, receivables, purchase options, certificates of deposit, securities or other documents or memoranda, indicating ownership of any right or rights in the same; 10) balance sheets and income statements of any businesses in which you participate or

operate; 11) contracts or agreements to purchase or sell any assets or interest you own or propose to own; 12) insurance policies; 13) list of properties in trust; 14) contracts or agreements whereby you purchase or sold any assets or interest; 15) books or memoranda of accounts receivable; 16) lists of jewelry, household goods, machinery or equipment; 17) deeds to real estate or documents indicating your interest, present or future, in real estate; 18) other notes, documents or memoranda indicating your interest in property real or personal; 19) listing of any profit sharing, stock or option or pension plans, profits and loss statements of account; and 20) copies of all bills that you owe or statements of indebtedness.

I listed all these requests to demonstrate the overwhelming, over-reaching and burdensome nature of the requests. In fact, one would be hard pressed to come up with a single personal financial piece of information that Plaintiff does not seek from Mark Nelson. It is simple to see from the broad requests for personal information that Plaintiff is seeking assets against which it intends to improperly levy. This if further evidence of the unforeseen and excessive actions of the Plaintiff in its enforcement of the Judgment against the Respondents and Respondents ask that this Court deny Plaintiff this unfettered access to the personal financial circumstances of Mark Nelson's life. Mark Nelson and GGX, as outlined above, have cooperated to comply with the ordered disgorgement of assets.

Plaintiff claims that *Credit Lyonnais, S.A. v. SGC International, Inc.*, 160 F.3d 428 (8th Cir. 1998), provides authority for the unprecedented request for personal information under these circumstances. This case does not provide for such a broad application of the discovery rules. *Credit Lyonnais* the creditor wanted to examine the relationship between the debtor company (SGC) and the individual (Sedelmayer) who was the sole officer, director, shareholder and decision maker. SGC was a company who refused to return the creditor's accidental transfer of

funds to its Swiss bank accounts. *Id.* at 429. Sedelmayer refused to provide discovery because he claimed that he had resigned as the president of the debtor company. *Id.* at 430. In the creditors' request for an order compelling Sedelmayer to be deposed in his individual capacity and produce personal financial documents, the creditor presented evidence to the court of the close relationship between the SGC and Sedelmayer. *Id.* at 430.

In this case, Plaintiff seeks all kinds of financial information from Mark Nelson. Plaintiff summarily states that there is a close relationship between Mark Nelson, GGX, the other companies and Brian Nelson without presenting one shed of evidence to support such a conclusion. Plaintiff further asserts that this "close relationship" provides it with the authority to seek all Mark Nelson's financial information from the year 2000 forward. Plaintiff did not present sufficient evidence to warrant this unfettered examination of a man's financial circumstances, especially since this Court has not found that Mark Nelson is personally liable or personally received any of the assets subject to Plaintiff's Judgment.

Again, the Respondents request that this Court deny Plaintiff's extraordinary board, unjustified and unsupported request to examine Mark Nelson in his individual capacity and obtain essentially all of Mark Nelson's personal information from 2000 to the present, or in the alternative, limit the information it seeks in a reasonable manner. Plaintiff should not be allowed to go on a fishing expedition meant to harass and unduly burden Mark Nelson.

B. Discovery Rules as they apply to GGX and Mark Nelson in his official capacity.

The same discovery rules as cited above apply to GGX and Mark Nelson in his official capacity. Respondents request that if Plaintiff is granted relief to re-examine GGX and Mark Nelson in his official capacity that it be limited to information that Respondents have not already supplied. Mark Nelson was deposed in December of 2002 and provided about 9 months worth

of financial information of GGX because GGX was only formed in 2002. Obviously, GGX cannot provided information about its assets prior to the time it was formed. Further, GGX has sought permission from the Court to file its books and records conventionally and will file those documents once the Court either grants or denies its request. With regard to Plaintiff's request for the entity formation documents of GGX, those were provided previously.

C. Timing of the Deposition.

Plaintiff has requested that GGX and Mark Nelson be deposed on November 29, 2004, but Plaintiff and counsel for Respondents have tentatively agreed to an alternative date of December 13, 2004. Plaintiff hoped to depose Mark Nelson and Brian Nelson on the same day. Now that Brian Nelson's attorney has a motion before the Court for his withdrawal from this matter, it may be necessary to post-pone the depositions until the week of December 20, 2004 so that the withdrawal matter be determined first. Respondents so request that Mark Nelson's deposition not occur prior to December 20, 2004 to allow all to be held on the same day.

D. What Plaintiff really wants to do is collect Mark Nelson's personal financial information so that it can improperly levy against them.

Plaintiff has shown by its past behavior that it cannot be trusted to stay within the bounds of the Court's Judgment. Plaintiff has issued garnishments against GGX's bank accounts on the basis of a Writ of Execution which provides that Respondents are liable for the *entire* amount of the Judgment. Allowing Plaintiff to conduct discovery into the personal assets of Mark Nelson will only allow it to further violate this Court's order and intent and execute against Mark Nelson's personal assets.

## IV.

## CONCLUSION

For all of the reasons set forth above, Respondents request that the Court limit Plaintiff's collection remedies to those in direct pursuit of the fraudulently transferred assets or the proceeds there from and that the Court not allow Plaintiff to depose Mark Nelson in his individual capacity and obtain personal financial information.

Dated: November 17, 2004

s/ Paige M. Fitzgerald
Paige Fitzgerald (Atty. Reg. No. 0303082)
Stephenson & Sanford P.L.C.
1905 E. Wayzata Blvd. Suite 220
Wayzata, MN 55391
952-404-2100
ATTORNEYS FOR RESPONDENTS