**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

| | | |
|---|---|---|
| **CLARINDA COLOR LLC,**<br><br>**Plaintiff,**<br>**v.**<br><br>**BW ACQUISITION CORPORATION, BEOWULF LTD., and BRIAN NELSON,**<br><br>**Defendants,**<br>**v.**<br><br>**WULF MANAGEMENT CORPORATION, MARK NELSON, and GREAT GRAPHX.COM, INC.,**<br><br>**Third-Party Respondents.** | **)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)**<br>**)** | **Civil No. 00-722 JMR/FLN**<br><br>**Honorable James Rosenbaum**<br>**Chief U.S. District Judge**<br><br>**Honorable Franklin Noel**<br>**Magistrate Judge** |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONTEMPT AS TO BRIAN NELSON AND MARK NELSON**

NOW COMES Plaintiff, Clarinda Color, LLC ("Clarinda"), by and through its counsel, FREEBORN & PETERS LLP, and for its Memorandum of Law in Support of the Motion for Contempt ("Motion") as to Brian Nelson ("Brian") and Mark Nelson ("Mark"), pursuant to this Court's inherent authority and Rule 69 of the Federal Rules of Civil Procedure, states as follows:

**BACKGROUND**

1. On March 22, 2000, Clarinda filed a complaint herein against BW Acquisition Corporation ("BWAC"), Beowulf Ltd., and Brian for damages for breach of a Sale of Assets Agreement, Accounts Receivable Servicing Agreement, and Assumption Agreement.

2. On May 2, 2001, a jury verdict was rendered in favor of Clarinda and against Defendant BWAC in the amount of $401,872.82 ("Judgment No. 1").

3. Thereafter, on August 28, 2001, counsel for Clarinda took the post-judgment deposition of Brian, as President of BWAC, regarding the status of the assets of BWAC, at which time it was learned that BWAC had transferred entirely all of its assets to Wulf Management Corporation ("Wulf"), a company for which Brian's brother, Mark, was the Chief Operating Officer, and for which Brian was President, director and sole shareholder.

4. Accordingly, Clarinda commenced a third-party proceeding against Wulf and Mark by filing a Motion for Temporary Injunction and Petition to Avoid Fraudulent Transfers and Enforce Constructive Trust ("Petition") against them. Pursuant thereto, on November 25, 2002, the Court enjoined Wulf from transferring Clarinda's accounts receivables, valued at $401,872.82, or cash equivalent thereto, pending disposition of Clarinda's Petition.

5. Thereafter, on December 30, 2002, with leave of Court, Clarinda again took the deposition of Brian, as President of BWAC, as well as Mark, as former Chief Operating Officer of Wulf, with regard to the status of the assets of BWAC and Wulf and the claims made in the Petition. Therein, Clarinda unbelievably learned of yet another transfer of assets, this time from Wulf to Great Graphx.com, Inc. ("Great Graphx"), a company for which Mark was the sole owner and President.

6. Despite the fact that Wulf transferred its assets to Great Graphx in January 2002, Wulf's counsel still vigorously defended Clarinda's ability to get to them. Wulf did not even inform Clarinda or the Court of the transfer when the Court enjoined Wulf from transferring those assets and granted Clarinda leave to commence a third-party suit against it 11 months later in November 2002. It was not until December 30, 2002, in the depositions of the Nelsons, that Clarinda learned of the transfer and thereafter made it known to the Court what had been taking place.

7. Accordingly, on February 24, 2003, Clarinda filed a Motion for Leave to File Amended Petition for Temporary Injunction and Motion for Temporary Injunction and Amended Petition to Avoid Fraudulent Transfers and Enforce Constructive Trust by Requesting Relief for the Court to Commence a Third-Party Complaint against Great Graphx. Clarinda's motions were granted on March 14, 2003, allowing Clarinda's Amended Petition to Avoid Fraudulent Transfers and Enforce Constructive Trust ("Amended Petition") to be filed and enjoining Great Graphx and Mark from transferring any assets or their cash equivalent in the amount of $401,872.82, pending disposition of this matter.

8. On October 3, 2003, Clarinda filed a Motion for Summary Judgment as to its Amended Petition, which the Court granted pursuant to its June 14, 2004 Order (the "Order"). See pp. 12, ¶ 5 of the June 14, 2004 Order, a true and correct copy of which is attached to the Affidavit of Neal H. Levin ("Affidavit") as ***Exhibit A***.

9. Therein, the Court found that BWAC had fraudulently transferred its assets to Wulf, entered judgment against Wulf in the amount of $401,872.82 ("Judgment No. 2"), and ordered Wulf to immediately disgorge the transferred assets from BWAC or their cash equivalent value (the "Fraudulently Transferred Assets") to the extent necessary to satisfy Judgment No. 1. See pp. 12-13 of ***Exhibit A,*** and Judgment No. 2, a true and correct copy of which is attached to the Affidavit as ***Exhibit B***.

10. The Court also divested Wulf and Great Graphx of legal title to the Fraudulently Transferred Assets and imposed a constructive trust in favor of Clarinda on the Fraudulently Transferred Assets, wherever located, up to the value of Judgment No. 1 until satisfied. See the July 9, 2004 Order, attached to the Affidavit as ***Exhibit C.***

11. Additionally, the Court found that the subsequent transfers of those assets to Great Graphx or otherwise were void and ordered Great Graphx as well as any subsequent transferees to immediately cease using and disgorge the Fraudulently Transferred Assets or their cash equivalent in order to satisfy Judgment No. 1. See pp. 4, 11 and 13 of ***Exhibit A*** and ***Exhibit B***.

12. Furthermore and more importantly, the Court again enjoined the further transfer or use of the Fraudulently Transferred Assets. See p. 12, ¶ 6 of ***Exhibit A*** and ***Exhibit B.***

13. Thereafter, pursuant to Judgment No. 2, on or about July 15, 2004, Clarinda seized some of the Fraudulently Transferred Assets in the hands of Great Graphx, namely equipment (the "Seizure"). Clarinda also issued a writ of garnishment as to Great Graphx's Business Account at Stearns Bank on or about June 30, 2004 (the "Garnishment").

14. Inasmuch as the Seizure and Garnishment only resulted in a *de minimus* recovery by Clarinda against the total outstanding judgment, Clarinda continued to conduct post-judgment discovery and took the depositions of Brian and Mark on January 28, 2005 with leave of Court (the "2005 Depositions"). See true and correct copies of the relevant pages of the transcripts of the 2005 Depositions of Mark and Brian, attached to the Affidavit as ***Exhibits D*** and ***E***, respectively.

15. During the deposition of Mark, Clarinda shockingly learned of ***yet another*** transfer, this time from Great Graphx to yet a fourth entity, and this despite Judgments No. 1 and 2 and the Court's enjoinder of any further transfers.

16. Mark testified that Great Graphx was no longer in business in light of the Seizure and that after the Seizure, Mark had formed a new company named Video Division Inc.[1] ("Video

[1] Note that contrary to Mark's testimony in his 2005 Deposition, there is no record of any Video Division Inc. with the State of Minnesota. Furthermore, the Articles of Incorporation for Video Division received by the undersigned from Mark, a copy of which is attached to the Affidavit as ***Exhibit F***, were admittedly never filed.

Division") and opened a new business account at Stearns Bank (the "Video Division Account") to pay Great Graphx's business expenses. See pp. 44, 45 and 65 of ***Exhibit D.***

17. Mark and Brian both testified during the 2005 Depositions that Mark opened the Video Division Account and had transferred Great Graphx's assets thereto ***because Great Graphx's account was being attacked by Clarinda***. The money was to be used, and was in fact exclusively used, to pay Great Graphx's expenses to creditors other than Clarinda, ***including to pay money to Mark and Brian Nelson!*** See pp. 44-45 and 65 of ***Exhibit D*** and pp. 28-29 of ***Exhibit E.***

18. The transfer of funds to the Video Division Account again defrauded Clarinda out of money to which it was rightfully entitled.

19. Pursuant to the Garnishment, Stearns Bank swept Great Graphx's account on three separate occasions; July 13, 2004, July 19, 2004 and August 3, 2004. See the July and August 2004 bank statements of Great Graphx, attached to the Affidavit as ***Exhibit G***.

20. The Video Division Account was opened on July 28, 2004 with Great Graphx's very own funds, namely four checks made payable to Great Graphx in the total amount of $5,441.48 (the "Four Checks"). See Video Division's July 2004 bank statement and the Four Checks, true and correct copies of which are attached to the Affidavit as ***Exhibit H.***

21. The Four Checks belonging to Great Graphx would have and should have been deposited into Great Graphx's account, but were not inasmuch as Brian and Mark knew that Clarinda would then recover those funds.

22. Brian and Mark opened the Video Division Account to deposit the Four Checks for the sole purpose of preventing Clarinda from collecting the funds to which it is entitled. When Great Graphx's account was garnished on August 3, 2004, it resulted only in the recovery of its

then current balance, $22.82, far less than it would have had the Four Checks totaling $5,441.48 been deposited therein. See ***Exhibit G***.

23. Just as Mark was president of and formed Great Graphx, Mark also was president of and formed Video Division. See the Corporate Banking Resolution of Video Division, the Articles of Incorporation, and the Internal Revenue Service's Federal Tax ID issuance form submitted to Stearns Bank by Mark Nelson, attached hereto as ***Exhibit I***. [2]

24. Despite a year of claims by Brian that Great Graphx was not his company, that he didn't work for the company, and that all assets and operations were exclusively Mark's, Clarinda has now discovered that Brian was actively involved in the affairs of Great Graphx. He admitted that he was involved in the liquidation and closing down of Great Graphx. See p. 27 of ***Exhibit E.*** Additionally, Brian had promised ACRO Business Finance to "continue to be active in monitoring the affairs" of Great Graphx as an express warranty used to induce ACRO to transfer the loan obligations of Wulf to Great Graphx. See a copy of the 1/24/03 ACRO and Brian Workout Agreement, attached to the Affidavit as ***Exhibit J.***[3]

---

[2] Note that any reference to Video Division being a corporate entity in the Resolution submitted to Stearns Bank is inherently false for the reasons set forth at *fn.1*, *supra.* Additionally, the Internal Revenue Service Federal Tax ID issuance form submitted to Stearns Bank by Mark Nelson is very suspect inasmuch as 1) Video Division was never incorporated and could not realistically have a federal tax ID number, and 2) the name Video Division is not computer-printed on the form but rather appears in handwriting.

[3] Note that this and other evidence have unearthed ACRO's intimate knowledge of and participation in this outrageous fraud upon Clarinda. Knowing that Clarinda had a judgment against BW, it loaned money to Wulf. Knowing that Wulf was in trouble, it agreed to transfer the obligation to Great Graphx, further knowing that Brian didn't want his name on the door to yet having Brian sign a side agreement that he would operate and continually monitor the affairs of Great Graphx as a pre-condition of transferring the loan obligation. Then, ACRO not only funded Wulf's, Great Graphx's and the Nelsons' attorneys, it allowed Great Graphx to open an account in the name of Video Division and allowed the use of cash collateral despite the company being insolvent, but it also, according to Mark, helped to fund the account. In light of the foregoing, Clarinda has sought to amend its Complaint filed in this Court as against the Nelsons for their individual participation in each of the afore-described fraudulent transfers, therein naming ACRO and its principals as party Defendants.

25. Not only did ACRO have knowledge of the Judgments entered herein, but the Video Division Account, to Clarinda's amazement, was financed by ACRO and opened with its permission. Both Jack Hart and Roger Bekel had knowledge of the foregoing and authorized same. See pp. 37-38 and 63-64 of ***Exhibit D.***

26. Mark also testified that, due to the Seizure, ACRO allowed it to use the funds and accounts receivables from Great Graphx collateral account to fund the Video Division Account in lieu of those funds being used to pay down the loans in the hopes of the business surviving. See pp. 46-49 and 62-64 of ***Exhibit D.***

27. Mark further testified that he met with Hart and Bekel of ACRO and discussed the disposition of the equipment which Clarinda was going to be seizing. ACRO thought about buying the seized equipment back after the Seizure for Great Graphx to use, but ACRO and Mark thought that Clarinda could just seize it again. See pp. 63-64 of ***Exhibit D.***

28. Instead, ACRO and Great Graphx decided it would be better to divert the funds from the Collateral Account to the Video Division Account to allow Great Graphx to evade Clarinda's Judgments and keep the business viable. ***Id.***

29. All of Great Graphx's accounts receivables were financed through ACRO. See p. 20 of ***Exhibit D.***

30. As further evidence of their participation in this massive cover-up, ACRO was paying the legal fees of Mark's counsel, Stephenson & Sanford, in the 2000 Case, as well as, on information and belief, the legal fees for Michael Chase, who represented all entities and individuals, both upon the request of Brian and Mark. All counsel funded by ACRO sought to vigorously defend against Clarinda's fraudulent transfer claims and otherwise support the

ongoing attempts to avoid satisfaction of the underlying judgment. See pp. 39-41 of ***Exhibit D*** and p. 29 of ***Exhibit E.***

31. While Brian's name did not appear on the Articles of Incorporation for Video Division, he was very much involved in the transfers from Great Graphx as an active participant in the ongoing conspiracy to keep Clarinda from enforcing its judgment.

32. The transfer of the Fraudulently Transferred Assets from Great Graphx to Video Division constitutes not only another vexatious violation of the Court's orders, but is yet another fraudulent transfer intended to defraud Clarinda and this Court.

33. Mark and Brian have now systematically defrauded Clarinda from collecting that to which it is rightfully entitled on at least three separate occasions without consequence and now in direct violation of this Court's orders.

34. Brian and Mark must be stopped from their continuous and repeated schemes to defraud Clarinda and disobey this Court.

**APPLICABLE AUTHORITY**

35. To be held in contempt for violation of a court's order, a party must have actual knowledge of the order and it must be sufficiently specific to be enforceable. ***Schaefer Fan Co., Inc. v. J & D Manufacturing,*** 265 F. 3d 1282, 1289 (Fed. Cir. Minn. 2001). A court's granting of a contempt order is reviewed by an abuse of discretion standard. ***Id.*** The party who seeks a contempt order bears the burden of proving such relief by clear and convincing evidence. ***Jake's Ltd., Inc. v. City of Coates,*** 356 F.3d 896, 899-900 (8th Cir. 2004).

36. The civil contempt power serves two purposes: to effectuate compliance with an order, and to compensate individuals for harm incurred by noncompliance. ***Hartman v. Lyng,*** 884 F.2d 1103, 1106 (8th Cir. 1989). An award of damages serves to make reparation to the

movant, thereby restoring the party to the position in which it would have been had the Court's order not been violated. The Eighth Circuit reviews an award of damages for clear error. ***Id.***

37. Additionally, the Court, in its sound discretion, may award attorneys' fees and costs for expenses reasonably incurred in bringing a contempt proceeding. While willfulness is not necessary for an award of fees, it may be properly considered in deciding whether to award fees and costs for violation of an injunction. ***Id.*** at 1107, ***Jake's Ltd.,*** 356 F.3d at 900.

**ARGUMENT**

38. The Court must take action to stop the blatant and willful violations of its orders. It should also compensate Clarinda by requiring Brian and Mark to pay personally for this latest loss they have caused Clarinda.

39. All of the conditions necessary for this Court to hold Brian and Mark in contempt are present. Moreover, the willful nature of their actions mandate that this Court award fees and costs to Clarinda in investigating this latest fraudulent transfer and bringing this Motion.

40. Brian and Mark, as parties to this matter, had knowledge of the Order that was entered enjoining the further transfer of the Fraudulently Transferred Assets. Once again, by their own admission, they knew exactly what they were doing when they transferred the funds from Great Graphx to the Video Division Account. Not only is such behavior amoral and in violation of the Court's orders, but it demonstrates their determination to evade satisfaction of the Judgments and to take whatever steps necessary to do so.

41. More importantly however, it demonstrates their callous attitude toward this tribunal and its decrees. The Court must let Brian and Mark know that the Court upholds its decrees and that they are not optional undertakings to be regarded lightly.

42. Justice requires that this Court hold Brian and Mark in civil contempt, award Clarinda at least $5,441.48, representing the amount of the Four Checks, and enter an award of attorneys' fees and costs in investigating and bringing this Motion.

WHEREFORE, CLARINDA COLOR LLC respectfully requests that the Court enter an order as follows:

A. Granting this Motion in its entirety;

B. Holding Brian Nelson and Mark Nelson in civil contempt of this Court for violating its Order;

C. Entering judgment in the amount of $5,441.48 against Brian and Mark Nelson, jointly and severally;

D. Awarding Clarinda Color LLC the costs and fees incurred in investigating Fraudulent Transfer 3 and in bringing this Motion;

E. Awarding sanctions in an amount necessary to punish and deter similar conduct by these and other parties similarly situated; and

F. For such other and further relief as this Court deems just and equitable.

Respectfully submitted,
**CLARINDA COLOR LLC**

By: _____/s/ Neal H. Levin___________
One of its Attorneys

Admitted *pro hac vice*:
Neal H. Levin, Esq. (IL #6203156)
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
(312) 360-6530

Local counsel:
Todd L. Gurstel, Esq. (#185619)
The Gurstel Law Firm, P.A.
401 N. Third Street, Suite 590
Minneapolis, Minnesota 55401
(612) 664-8200

#811471v2