**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

| | | |
|---|---|---|
| **CLARINDA COLOR LLC,**<br><br>**Plaintiff,**<br>**v.**<br><br>**BW ACQUISITION CORPORATION, BEOWULF LTD., and BRIAN NELSON,**<br><br>**Defendants,**<br>**v.**<br><br>**WULF MANAGEMENT CORPORATION, MARK NELSON, and GREAT GRAPHX.COM, INC.,**<br><br>**Third-Party Respondents.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil No. 00-722 JMR/FLN**<br><br>**Honorable James Rosenbaum**<br>**Chief U.S. District Judge**<br><br>**Honorable Franklin Noel**<br>**Magistrate Judge** |

**AFFIDAVIT OF NEAL H. LEVIN**

I, Neal H. Levin, the Affiant, being duly sworn and under oath, do state as follows:

1. I am the attorney of record for Clarinda Color LLC ("Clarinda") and am competent to testify as to the following facts.

2. On October 3, 2003, Clarinda filed a Motion for Summary Judgment as to its Amended Petition, which the Court granted pursuant to its June 14, 2004 Order (the "Order"). See pp. 12, ¶ 5 of the ***June 14, 2004 Order***, a true and correct copy of which is attached hereto as ***Exhibit A***.

3. Therein, the Court found that BWAC had fraudulently transferred its assets to Wulf, entered judgment against Wulf in the amount of $401,872.82 ("Judgment No. 2"), and ordered Wulf Management Corporation ("Wulf") to immediately disgorge the transferred assets from BW Acquisition Corp. ("BWAC") or their cash equivalent value (the "Fraudulently Transferred Assets") to the extent necessary to satisfy the judgment entered against BWAC in the amount of

$401,872.82 on May 2, 2001 ("Judgment No. 1"). See pp. 12-13 of ***Exhibit A***, and Judgment No. 2, a true and correct copy of which is attached hereto as ***Exhibit B***.

4. The Court also divested Wulf and its subsequent transferee, Great Graphx.com, Inc. ("Great Graphx") of legal title to the Fraudulently Transferred Assets and imposed a constructive trust in favor of Clarinda on the Fraudulently Transferred Assets, wherever located, up to the value of Judgment No. 1 until satisfied. See the July 9, 2004 Order, attached hereto as ***Exhibit C.***

5. Additionally, the Court found that the subsequent transfers of those assets to Great Graphx or otherwise were void and ordered Great Graphx as well as any subsequent transferees to immediately cease using and disgorge the Fraudulently Transferred Assets or their cash equivalent in order to satisfy Judgment No. 1. See pp. 4, 11 and 13 of ***Exhibit A*** and ***Exhibit B***.

6. Furthermore and more importantly, the Court again enjoined the further transfer or use of the Fraudulently Transferred Assets. See p. 12, ¶ 6 of ***Exhibit A*** and ***Exhibit B.***

7. Thereafter, pursuant to Judgment No. 2, on or about July 15, 2004, Clarinda seized some of the Fraudulently Transferred Assets in the hands of Great Graphx, namely equipment (the "Seizure"). Clarinda also issued a writ of garnishment as to Great Graphx's Business Account at Stearns Bank on or about June 30, 2004 (the "Garnishment").

8. Inasmuch as the Seizure and Garnishment only resulted in a *de minimus* recovery by Clarinda against the total outstanding judgment, Clarinda continued to conduct post-judgment discovery and took the depositions of Brian and Mark on January 28, 2005 with leave of Court (the "2005 Depositions"). See true and correct copies of the relevant pages of the transcripts of the 2005 Depositions of Mark and Brian, attached to the Affidavit as ***Exhibits D*** and ***E***, respectively.

9. During the deposition of Mark, Clarinda shockingly learned of ***yet another*** transfer, this time from Great Graphx to yet a fourth entity, and this despite Judgments No. 1 and 2 and the Court's enjoinder of any further transfers.

10. Mark testified that Great Graphx was no longer in business in light of the seizure and that after the Seizure, Mark had formed a new company named Video Division, Inc.[1] ("Video Division") and opened a new business account at Stearns Bank (the "Video Division Account") to pay Great Graphx's business expenses. See pp. 44, 45 and 65 of ***Exhibit D.***

11. Mark and Brian both testified during the 2005 Depositions that Mark opened the Video Division Account and had transferred Great Graphx's assets thereto ***because Great Graphx's account was being attacked by Clarinda***. The money was to be used, and was in fact exclusively used, to pay Great Graphx's expenses to creditors other than Clarinda, ***including to pay money to Mark and Brian Nelson!*** See pp. 44-45 and 65 of ***Exhibit D*** and pp. 28-29 of ***Exhibit E.***

12. The transfer of funds to the Video Division Account again defrauded Clarinda out of money to which it was rightfully entitled.

13. Pursuant to the Garnishment, Stearns Bank swept Great Graphx's account on three separate occasions; July 13, 2004, July 19, 2004 and August 3, 2004. See the July and August 2004 bank statements of Great Graphx, attached to the Affidavit as ***Exhibit G***.

14. The Video Division Account was opened on July 28, 2004 with Great Graphx's very own funds, namely four checks made payable to Great Graphx in the total amount of $5,441.48 (the "Four Checks"). See Video Division's July 2004 bank statement and the Four Checks, true and correct copies of which are attached to the Affidavit as ***Exhibit H.***

15. The Four Checks belonging to Great Graphx would have and should have been deposited into Great Graphx's account, but were not inasmuch as Brian and Mark knew that Clarinda would then recover those funds.

16. Brian and Mark opened the Video Division Account to deposit the Four Checks for the sole purpose of preventing Clarinda from collecting the funds to which it is entitled. When Great Graphx's account was garnished on August 3, 2004, it resulted only in the recovery of its then current balance, $22.82, far less than it would have had the Four Checks totaling $5,441.48 been deposited therein. See ***Exhibit G***.

17. Just as Mark was president of and formed Great Graphx, Mark also was president of and formed Video Division. See the Corporate Banking Resolution of Video Division, Articles of Incorporation and Internal Revenue Service Federal Tax ID issuance form submitted to Stearns Bank by Mark Nelson, attached hereto as ***Exhibit I***. [2]

18. Despite a year of claims by Brian that Great Graphx was not his company, the he didn't work for the company, and that all assets and operations were exclusively Mark's, Clarinda has now discovered that Brian was actively involved in the affairs of Great Graphx. He admitted that he was involved in the liquidation and closing down of Great Graphx. See p. 27 of ***Exhibit E.*** Additionally, Brian had promised ACRO Business Finance to "continue to be active in monitoring the affairs" of Great Graphx as and express warranty used to enduce ACRO to transfer the loan obligations of Wulf to Great Graphx. See a copy of the 1/24/03 ACRO and Brian Workout Agreement, attached to the Affidavit as ***Exhibit J.***[3]

---

[1] Note that contrary to Mark's testimony in his 2005 Deposition, there is no record of any Video Division Inc. with the State of Minnesota. Furthermore, the Articles of Incorporation for Video Division received by the undersigned from Mark, a copy of which is attached to the Affidavit as ***Exhibit F***, were admittedly never filed.

[2] Note that any reference to Video Division being a corporate entity in the Resolution submitted to Stearns Bank is inherently false for the reasons set forth at *fn. 1, supra*.

19. While Brian's name did not appear on the Articles of Incorporation for Video Division, he was very much involved in the transfers from Great Graphx as an active participant in the ongoing conspiracy to keep Clarinda's from enforcing its judgment.

20. I have filed the Motion for Contempt as to Brian Nelson and Mark Nelson on behalf of Clarinda because the transfer of assets from Great Graphx to Video Division constitutes not only a vexatious violation of the Court's Order, but is yet another fraudulent transfer conducted by Brian and Mark to defraud Clarinda and prevent it from collecting its judgment.

Further, Affiant sayeth naught.

Neal H. Levin

Subscribed and sworn to before me this
25th day of March, 2005.

Notary Public

"OFFICIAL SEAL"
SHEILA ZELLER
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 2/20/2006

Admitted *pro hac vice*:
Neal H. Levin, Esq. (IL #6203156)
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606-6677
(312) 360-6530

Local counsel:
Todd L. Gurstel, Esq. (#185619)
The Gurstel Law Firm, P.A.
401 N. Third Street, Suite 590
Minneapolis, Minnesota 55401
(612) 664-8200

[3] Note that this and other evidence have unearthed ACRO's intimate knowledge of and participation in this outrageous fraud upon Clarinda. Knowing that Clarinda had a judgment against BW, it loaned money to Wulf. Knowing that Wulf was in trouble, it agreed to transfer the obligation to Great Graphx, further knowing that Brian didn't want his name on the door to yet having Brian sign a side agreement that he would operate and continually monitor the affairs of Great Graphx as a pre-condition of transferring the loan obligation. Then, ACRO not only funded Wulf's Great Graphx's and the Nelsons' attorneys, it allowed Great Graphx to open an account in the name of Video Division and allowed the use of cash collateral despite the company being insolvent, but it also, according to Mark, helped to fund the account. In light of the foregoing, Clarinda has sought to amend its Complaint filed in this Court as against the Nelsons for their individual participation in each of the afore-described fraudulent transfers, therein naming ACRO and its principals as party Defendants.